Case number 19-1088, Steve and Seth Petitioner v. US RRRB, Mr. Parker and Mr. Petitioner, Mr. Olovich, the Respondent. Good morning, Your Honors. My name is Brennan McCarthy. I represent Steve and Seth in the matter of Seth v. RRRB Case number 19-1088. This isn't actually an important case. I sort of stumbled on this. Mr. Seth is my wife's uncle. To be blunt, Your Honor, I am a true courtroom attorney. You will not find me in the fines of higher appellate courts very often. I create the records that Your Honor usually reads. I don't come up here and argue. This is unusual for me. I took a look at this particular case and was struck basically by the nature of this case. What happened was in 1997, the Railroad Retirement Board found that my client was working for a company, we'll call them RPI, and was not being controlled by CSX. CSX later said, perhaps we've made a boo-boo and we can reconsider that. And the nature of his work has changed. To be clear, I thought what CSX said is the nature of the work has changed. They did, Your Honor. That's not the same thing as saying we made a boo-boo. But what happened, Your Honor, was when the hearing examiner did his examination, he found that in fact during the entire work period that Mr. Seth had worked for RPI, he had been directed by CSX. You're relying on that phrase, uncontroverted position. Correct. Of Mr. Seth. Correct, Your Honor. But of course, that was not before him in that proceeding, right? Well, I think what happened... The lack of controversy is of questionable weight. It could be, Your Honor, except that at the very beginning what happened was it becomes a chicken and egg problem. What he says is during this period, Mr. Seth was directed by CSX, but we're not going to consider this period that's four years prior to him actually saying something. When they truncated that claim, they simply cut that off from any of their considerations. And what I'm saying is that if you follow the line of what the examiner said, he said during the entire period. So what the board is asking us to do is to assume that this must mean that during the period where it was truncated from May of 87 through November of 87 and January of 91 through December of 1992, he must not have been directed. But he didn't make that alleging either. Certainly. I thought it was only saying there was no absence of a finding with respect to that period. It surely was correct. Well, there was no absence of finding, Your Honor. What the finding was is that because of the four-year statute of limitations, this isn't even part of my hearing. He had made the determination beforehand that he wasn't going to consider those periods. Right. And my point on this is if you look at 211.16, this should have, even if this was good faith, that four-year period should have been set aside. They should have gone back and made that determination back to his periods of employment by RPI. Where does this begin? We have a goes before the hearing examiner. Correct. Examine the period that is within the four years. And he looks at that. It's not within the four years. Right. But when did that kick in? Well, Your Honor, what happened was is when they came out in 1997 and made their initial determination saying that my client was not due benefits as an employee of RPI under the Railroad Retirement Board scheme, they then reconsidered that in 2007. The effect of that examiner's... Well, in 2007, they were looking at RPI's proposal that it be reclassified. They were, Your Honor. And what the examiner found when he examined that was my client was, in fact, being directed by CSX. And that is on 110 of the administrative record. That's his finding. There was no difference between these two companies. No difference at all. CSX was controlling RPI. In 1987, when he was transferred... Correct, Your Honor. He was... This works better if you let us finish the question. Absolutely. He was transferred in 1987, and he was told at the time that you're no longer under the Railroad Retirement Plan. Is that correct? That is correct, Your Honor. So why didn't he lodge an objection then? Because there's no vehicle. He could have been told that, actually, Your Honor, but we don't know that either. This is sort of my problem with this. This is a creaky old statute. It's creaky. And I actually saw a court call up that. It said it's a creaky old statute. I see nothing where they have to tell you you're not under the Railroad Retirement Plan. Maybe I misunderstood. I thought he was told at the time that you're now here, you're no longer paying taxes, you're no longer getting the benefits. Am I wrong on that? I haven't seen that in the record, Your Honor. I think that would be an assumption. It's not an unfair assumption. I would hope that they would tell him. Well, does their pay stub show? Hmm? Would their pay stub show? Your Honor? One of my questions is how do they get notice? And that's my question, too. This is why this statute, to me, is creaky and strange. Did he ask for a client? How did I know? How did your client? Right. I think the only reason was he lodged his objection when the finding by the – when the board was conducting its investigation on whether or not they were under the Railroad Retirement Plan. But you haven't made any argument about lack of notice in 1997-'92? I have not made – because I haven't seen anywhere that it was raised actually in the record. So in the March 9, 1987 letter from CXX, the – 1997, Your Honor. Yeah, Exhibit 53. Correct, Your Honor. It says that. You're no longer under railroad retirement. So he knew that in 1987, so. Was it 87? 1987. Right. So my question is why – I have absolutely no idea, Your Honor. But what I am saying is that in terms of what happened here is you can see that – I don't think CXX is being wholly truthful here. And they said they didn't direct his work in that letter. What did the examiner find about that? The examiner found that they were absolutely – in fact, were under – he was under the direct control of CXX. But, I mean, about the truthfulness aspect. He said that because he couldn't find a scienter element, he said that it wasn't fraudulent. Right, right. And what I'm saying is – And how are we to review that? What's our standard of review for – Well, the standard of review, Your Honor, I think for fraud, in my argument at this point, is they're using the – basically the Social Security Administration or the IRS definition of fraud, which is almost a criminal standard. And I use McCarthy v. Payne-Stewart, which is scienters eliminated. Fraud is any kind of fraud. It's constructive fraud. In fact, under McCarthy-Payne, under that line of cases, I can make the argument that their payment of his benefits or his – of his benefits for his benefit makes him a good attorney. So if you hear the constructive fraudery, what is there about his relationship with them that created a fiduciary duty? Was there fiduciary – Because they're paying his benefits – basically, they're paying his retirement benefits for his benefit. It's almost an ERISA situation. Basically, they're duty-bound to be truthful. If he fell under the penumbra of the railroad board and was actually being directed by them, they have a duty to be truthful because they're the ones that are paying the benefit. And they didn't do it – Did you make this argument before the board? He did not make this argument before the board, Your Honor, because that's the other problem. They're doing this to guys that are just railroad workers. They're not represented by counsel. This isn't like a traditional thing. And I think that Your Honors can find that if there is a – if this is a discretionary standard where they basically breach that, I think Your Honors can overturn it, whether it was raised or not. But the fact of the matter is, is I don't think the board has any real direction on what fraud is. They're using an IRS standard that's almost beyond a reasonable doubt and asking a bunch of railroad guys that drive engines and make tracks to prove that some multibillion-dollar company is committing fraud. I think that's ridiculous. Can we go back a moment? Sure. I thought you said that at page 110 – Correct, Your Honor. And you're talking about the joint appendix, but all the labeling is AR. Correct, Your Honor. Administrative record. You're finding that he was doing transportation work. Correct, Your Honor. I'm looking at AR 110. I don't – it seems to be a letter from 1995. I don't – it doesn't seem to have anything to do with what you were saying. Well, I said the examiner made a finding the RPI was not engaged in an independent trade or business from CSX. My apologies, Your Honor. It's AR 0027, Your Honor. Wow. 0027. And the examiner made a finding RPI was not engaged in an independent trade or business from CSX transportation because RPI and CSX are under the common control of CSX Corporation. They actually directed his work. And I took a look at that counsel's letter from 1995 to the 1996 period and it almost fell over. It completely counters what they said there. And in that original thing, that was a whitewash. They basically discounted what all the employees were saying and said, we've got the end. Have a nice day. You're not getting railroad retirement for benefits. And I think that's wrong. And I think that was fraud. So if one of my clients did this, I'd be asking if he bought his toothbrush. Just going back to that passage. Certainly, Your Honor. Now page AR 27. Yes, Your Honor. It says RPI is not engaged in an independent trade or business from CSX transportation. That's correct, Your Honor. I'm sorry. How does that speak to the period before 1993? Because, Your Honor, what he said was because I can't consider, because of the statute of limitations issue that the court has created. I'm just looking at this passage. Certainly, Your Honor. As a finding that would meet 211-16B22. And I look at it and I don't see how it could possibly do that. Because, Your Honor, it was a reconsideration of its earlier decision. Basically, it re-raised under the same facts. Right? And what he said was, at the very beginning, I'm going to eliminate from four years prior to when he said something. By doing that, by definition and by the effect of the order itself, simply cut those years off from consideration. There's no finding at all. There's no that he fell under what he said there or that it didn't. The regulation requires a finding, and you're turning that into the regulation being triggered by the absence of a finding. Your Honor, I would say that the regulation requires that the employer was not covered under the Railroad Retirement Act. I think that basically the guidance that is missing here is, when is this particular provision either that or fraud? Because I think this meets fraud. I'm sorry. And I know it's a tough thing to say, but. Well, let's stick with the finding. Sure. I think that what the Board needs is its guidance. It seems to be wrapped around the axle basically saying that we can't, it would be the rarest of occasions where we can go beyond four years when you have a record where it is very evident that CSX was not wholly truthful with them because they directed his work. And so what I'm missing here is when, what is fraud? Is it as defined by the IRS code? I don't think it is. I think when you have a federal statute or CFR, you can use any definition of fraud you want. You don't have to use beyond a reasonable doubt fraud. It can be constructed fraud. They use it in what they want, and they thought the most relevant one to use was the one borrowed from the tax office. But I think that that's also overly restrictive, Your Honor. They're using basically a heightened standard of fraud when you can use common fraud. We are instructed to give a lot of deference to agencies when they're interpreting their own regulations. I'm well aware, Your Honor, but I think that it's arbitrary and capricious for them to ask for a railroad guy to prove a multi-billion company had a sign to her, met the definition of fraud as defined under another section of the U.S. code against a company. I just, I just, it's impossible. Because the nature of the proceeding itself is not an adversarial proceeding.  That argument would apply to any definition of fraud. Well, depending, Your Honor, because it's a lower, but if you find that they have a duty to provide these, to provide these monies, I think then it goes actually into a lower. Duty usually sounds like negligence. It could, Your Honor. If you find they have a fiduciary duty. Negligence is not fraud. I know that, Your Honor. If you find they have a fiduciary duty, in other words they have a duty to pay these because it goes. Negligence by a fiduciary is automatically fraud. That's what you're saying. No, Your Honor. Fraud by a fiduciary is automatically fraud. Yeah. And it's not by a preponderance of the evidence. Excuse me, that's going in circles. Okay. And so. Right. You said railroad workers can't prove fraud. I would say that would be almost nigh on impossible. Right. And I'm saying that doesn't help your, that doesn't help your position because you still think they need to prove fraud. I think that they can't prove fraud as defined, a scienter element as defined under the U.S. code for basically tax fraud. I think that when you're saying they have to basically prove tax fraud to prove fraud when the tax fraud statute is completely axiomatic. Tell me what fraud you think they can prove. Your Honor, I think they can prove. Excuse me, sorry. Certainly not. Not negligence. Tell me what fraud. No, no, Your Honor. Nor was I making the point that negligence, you actually, it was constructive fraud, Your Honor. And what does that test? Well, constructive fraud is if the individual is under a duty, right, as stated in McCarthy v. Paine-Weber, which is from the District of Illinois, basically it's whether or not the statement they said was with a reckless disregard to the truth. Okay. So they can prove reckless disregard. They just can't prove. Reckless disregard. They said that he was not controlled by them. And the finding was that he was. So were they lying then or are they lying now? Your brief says you're seeking benefits under both the Railroad Retirement Act and the Railroad Unemployment Insurance Act. But I thought this was just. No, Your Honor. It would just be the railroad. Because that's their, that's what they do, Your Honor. He's just looking for the time periods that he was barred, which was May of 97. He's just looking for retirement benefits. He's looking for retirement benefits, Your Honor. He just wants to get paid when he should be. That's it. And I think there was a reckless disregard for the truth there. So I don't think there's any other way to read that correspondence. Okay. Thank you. Thanks very much, Your Honor. You didn't reserve any time for rebuttal, but I presume you'd like some. So we'll give you back a couple minutes. Thank you very much, Your Honor. Okay. Good morning. Good morning, Your Honors. May it please the Court, my name is Peter Orlewitz on behalf of the United States Railroad Retirement Board. In order to pay benefits under the Railroad Retirement Act, the Board keeps records of service and compensation for each individual in the railroad industry. Under Section 9 of that Act, those records are conclusive unless any error is called to the Board's attention within four years of the date that the railroads are required to report it to the Board. In this case, because the Board reasonably found that none of the regulatory exceptions to that four-year limit were applicable to Mr. Sett's case, this Court should deny Mr. Sett's petition for review. I have a question about that, because the Board said it can't give relief if it finds it inequitable. That's on page, administrative record 6, right? A number of times on that page it says, reasonable reliance doesn't matter, we cannot decide merely because it finds it inequitable. Correct? Yes, Your Honor. Isn't the fourth exception to the time period an equitable one? I believe it is, Your Honor. So that was just wrong when they said they couldn't exercise an equitable judgment. In light of the Seventh Circuit's decision in Weyerhaeuser where the Board did go beyond four years in the absence of a fraud. Did anybody point out to the Seventh Circuit that there was an equitable exception? Not that I'm aware of, Your Honor. No, so maybe they just weren't aware of it. They weren't ruling on that. They didn't. I'm sorry. So the Board's position is that Weyerhaeuser silently vacated that part of the regulation? No, Your Honor, but that regulation alone. You're not in the Seventh Circuit now anyhow. I'm sorry? You're not in the Seventh Circuit here anyhow. No, Your Honor. So is that still, is Romanet IV still a valid exception? We believe it is. It wasn't raised in this case at any point particularly. Okay. But the issue, and that's an important point. I take that. But what do I do with the fact that the Board, as part of its explanation for its decision in this case, said we can't make a judgment based on equitable consideration? So at least it was, it thought it had the argument before that this was unfair and I was reasonably reliant and he was making equity arguments to them, and he was pro se. And so they thought they were being asked to make an adjustment on equity grounds. I know you're saying it wasn't raised, but the argument seems to have been presented. Otherwise, I don't know why that language is in the decision. And they had a rule. Isn't that a problem with their decision? They have a rule that says they can do exactly what they said they couldn't do in the opinion? So to the extent that that regulation is at issue, the Board's position is that they decided not to. That's not what the opinion says. It says we can't. That is not. We know the difference between an agent and a decision that says I can't and I won't. And this is, as I read it, unless you can point to me a different language, this is a we can't. I don't have different language to point you to, Your Honor. Right. So it was a we can't. In light of where has it been. And that was wrong. So when he asked them, he made arguments to them. He might not have pointed to a regulation because he was a pro se railroad worker. But when he was asking them to consider the equities of the situation and they said we can't, that was legal error. The predominant feature. That may not have been raised here, but that was legal error. The predominant feature of Mr. Seth's arguments to the Board. I'm not asking about predominant features. I'm just asking about the fact that they thought they had to say we can't exercise equity. That's one of the features of the decision. In light of the fact that Mr. Seth focused on fraud in his arguments and because that's where the warehousing case is important. Because it involved the finding of fraud. And once the Board said there's. That doesn't make sense to me. Because I don't understand that. I don't understand that. The Board, again, we're dealing with a pro se at this stage. The Board cannot. The Board's regulations bind the Board as well. And the Board cannot ignore its own regulations merely because it finds them inequitable under the circumstances of this case. In the absence of fraud, right, we can't do that. And then again it says it doesn't matter. Even if he reasonably relied on what he was told. All on that same page. So it sounds to me like they said we have no power, unless we find fraud as we have defined it, we have no power to provide a remedy in this case. That's how I read it. You can tell me if I'm reading it wrong. I would like to understand that. That's how I read that page of the decision. And that just seems flatly wrong under the regulations. I don't know that the Board specifically considered the catch-all of any equitable case that the Board decides is or is not. I thought the Board was an expert here and it would know all four of its exceptions to the four-year time limit. I don't have a better explanation for you, Your Honor. I'm sorry. It is clear from the record that the Board did not reconsider the 97 decision involving CXX Real Property as an entity when it decided in 2007 that they would be prospectively covered as an employer. Briefly, I want to mention the reason that the Railroad Unemployment Insurance Act is an issue is that coverage under one act implies coverage under the other. The Board doesn't differentiate between the two. So when the Board makes a finding about... We have different time limits, though, right? For appealing a determination under the Railroad Unemployment Insurance Act, the timelines are different. But in terms of the definition of who is a covered employer, who is a covered employee, they're identical. And the best indication, the most compelling indication I can point to that the Board did not reconsider its 97 decision is when the Board made the initial decision on Mr. Seth's claim here in 2017. The labor member of the Board wrote a separate concurring opinion that emphasized in 1997, the labor member dissented from that 97 determination. The labor member thought at that time CSX Real Property should have been covered. The labor member in 2017 said, I still agree with that determination, and yet still said, I agree that the four-year limit applies to Mr. Seth's case and agreed with the result in this case. And so if Mr. Seth's counsel is correct that the 97 decision was reconsidered implicitly by the 2007 coverage decision, then the labor member's concurrence in 2017 is unnecessary and wrong. So unless the labor member misread the Board's decision and misunderstood exactly what was going on, there was no reconsideration of the 1997 decision. CSX as an entity – CSX Real Property as an entity was not covered up until January 1, 2007, and that 2007 decision said that they were covered prospectively from that point on. There's no inconsistency between saying – Would you speak to the fraud exception, please? Yes, Your Honor. The Board's regulations don't specifically define fraud. The fraud exception is completely created by regulation. It's not in the statute. It's not in Section 9 at all. Congress's unambiguous intent was to protect the Board from having to – from being compelled to correct after the four years. And so even though the Board's regulations don't define fraud in 211.16 specifically, we do have a regulation at 255.11 that compares fault and fraud. And it says, unlike fraud, fault does not require specific intent to deceive – deliberate intent to deceive. And so that scienter requirement, that deliberate intent to deceive, is in the Board's regulations in terms of what fraud is required. In the decision in this case, the Board articulated for purposes of that four-year limit, fraud requires intentional wrongdoing on the part of the employer with the specific intent to alter the employer's obligations under the acts. You're claiming deference to that interpretation in this case? Yes, Your Honor. Didn't you give a different definition of fraud to the Seventh Circuit in the Weyerhaeuser case? The Weyerhaeuser case didn't – the Board did not define fraud other than to say that whatever Weyerhaeuser did, it was not that. Well, on page 602, it says – listen, I'm taking the Seventh Circuit at its word, and I assume you are, too. The Board points out that it had previously found for fraud that the knowing failure to report compensation in the service as required in the act met the standard set forth in 211.16b, the fraud one. Knowing failure to report compensation in service. That's different than deliberate intent. And that it's quite, from the opinion, and I listened to the oral argument, it's very clear that a different – and the brief as well – that a different definition of fraud was being advanced in that case. But the decision here doesn't acknowledge the change in interpretation by the Board. So can we give it deference? The definition provides that the Seventh Circuit determined that that was an error of law to rely on that. No. It said fraud's not an issue in this case, so we're not going to address it, even assuming it's what they said. So, one, they didn't invalidate it. And so didn't – don't you, to get deference, have to – you may change your minds if it's reasonable, but you have to acknowledge a change in position. And given how central Weyerhaeuser was to your case here, I was just curious why the Board didn't acknowledge that it was changing positions on fraud. To the extent that the Board changed its position, I'll also point out, during the course of the examiner's proceeding, the examiner proposed a definition of fraud at which point all parties, including Mr. Seth and including CSX as the provide exceptions to object to the definition of fraud. That happens all the time in notice and comment rulemaking, but the Supreme Court has said that agencies have to acknowledge if they're changing positions. They can, and they just – they have to acknowledge it, address any reliance interests, and then explain reasonably their new position. But that didn't happen here. Correct, Your Honor. The regulation itself, of course, hasn't changed. Yeah. Why should we give deference to the Board's interpretation of fraud? Is there some substantive expertise that the Board has about the meaning of fraud? Beyond the fact that it is the Board's regulations and the highly deferential standard of review, all this Court needs is that the Board's decision was based on substantial evidence. Is that right? I mean, I thought our deference was tied to some expertise that the agency has in this area. We're viewed as a decision. I'm not aware of any special expertise that the Board has with respect to the definition of fraud. Are you? No, Your Honor. And it wasn't – it's a little hard to say it was assigned by Congress because Congress didn't create the fraud exception, as you've acknowledged. I just said four years flat. I want to briefly address Mr. Sutt's argument that there's somehow a fiduciary duty. There is no statutory provision of the Railroad Retirement Act that assigns a fiduciary duty to the employer. I'm not aware of any cases that have a general duty of an employer to employees. The duty under ERISA for benefit plans is statutory, and the Railroad Retirement Board or the Railroad Retirement Act, as a governmental plan, is explicitly accepted from that fiduciary duty. So the employer's duty to pay taxes on behalf of the employee, right, when they pay taxes to Social Security here, they're handing over the employee's money. They're doing that on behalf of the employee. I'm just curious about this. Do they – is that just purely a contractual relationship, or do they have some – imagine not what happened here. Some company says, I'd rather keep that for myself. Is that just a – is that not a breach of fiduciary obligation? And on that narrow question as to payment of my taxes for me. I don't believe that – the Board doesn't find it necessary to have a position on that specifically, other than to say that there's no fiduciary duty here. I don't know that a fiduciary – Wait. So how can you say there's no fiduciary duty here without having a position on whether there's a fiduciary duty attached to that action? I apologize. I misspoke, Your Honor. I may have misheard. I may have misunderstood you. I misspoke. I'm sorry. The – I don't know whether a fiduciary duty obligation is the right standard. Whatever obligation an employer has toward its employees, as I said, I don't have any case law to support that or to suggest that that is the appropriate standard. In the cases where there is a fiduciary duty, it is explicitly assigned by statute or some authority, and here we don't have that. Common law. And I'm not aware of any common law interpretation of the fiduciary duty that would imply a duty here. Okay. Great. Thank you very much. Thank you. Commissioner McCarthy, we'll give you back two minutes for rebuttal, just for rebuttal. I'll try and make it as quick as possible, Your Honor. Your Honor, I did also notice the equity exception. But you didn't argue it. I did not, Your Honor, mainly being, but if you take a look at that decision, you'll see they just automatically got rid of that too. Basically, what they're doing is they're putting their entire emphasis on that one particular section. They're not reading it as a whole. Sorry, does Weyerhaeuser cite that exception? Hmm? You're saying Weyerhaeuser got rid of that exception? Well, basically they're saying that Weyerhaeuser. I'm not asking you basically what they're saying. I'm asking you. It is basically what they're saying, Your Honor. Well, do they cite it? They do cite Weyerhaeuser, Your Honor. No. Does Weyerhaeuser cite the equity exception? I do not believe that they cite the. Is there any evidence? When I looked at it, Your Honor, I do not believe they cite that. Is there any evidence they were aware of it or it was argued to them? No, I've seen nothing of that. Okay, so it's a little hard to say they overruled it and got rid of it. I don't think they did, Your Honor. And you didn't argue this before? I did not, but it does feed into what my argument is. What they're doing is. You didn't argue this before, yes or no? No. Okay. But, Your Honor, it shows what they're doing is they're not reading that CFR section as a whole. They are placing all of their emphasis on that fraud exception under their definition of fraud. This entire section, this equity exception, what they're basically thinking is that Weyerhaeuser basically won't allow them under any circumstances other than fraud. I'm not saying that. I'm not saying that. I mean, the case was argued on the basis of the two exceptions mentioned in 211-16-B22. Right. Nobody was saying that fraud was the only basis to go on behind a four-year rule. But I believe what they said, if I recall, and honestly I don't have it in front of me, Your Honor, and my memory is not what it used to be, but what they said was that Weyerhaeuser will, in the absence of fraud as defined under the code, under Weyerhaeuser, we can't go beyond four years. There's no mention at all. Under the fraud exception. That's all they were saying is under this fraud exception. Under the fraud exception. Unless a finding of fraud is made, we can't go further. Correct. Yes, Your Honor. But in other words, what I'm looking at when I look at their various rulings, their entire emphasis is on that particular part of that exception. Nothing else. That equity, I don't think that this has been used at all, even though that could be used as a grounds. There's no doubt about it. There's no doubt about it. The other thing, Your Honor. Your time is up. There it is, Your Honor. Further questions? Thank you very much. Thank you very much, Your Honor.
judges: Griffith, Millett, Williams